JOHN J. NEWCOMB *vs.* BENJAMIN T. REED & others.

If an act of incorporation has been granted by the legislature, persons elected and acting as officers may incur the statute liability for the corporate debts, although the call for the first meeting was not signed by a majority of the persons named in the act, as required by *St.* 1855, *c.* 140.

CONTRACT, in which the plaintiff sought to charge the officers of the Boston Mechanical Bakery Company with a debt contracted in the name of the corporation, in consequence of their neglect to file certificates and statements of the condition of the corporation. At the trial in the superior court, before *Ames,* J., without a jury, the judge found for the defendants upon facts which are stated in the opinion; and the plaintiff alleged exceptions.

*C. B. Goodrich & E. Avery,* for the plaintiff.

*E. Merwin,* for the defendants.

HOAR, J. The defence to this action rests wholly upon the

assumption that the corporation, whose officers the plaintiff seeks to charge with a statute liability for its debts, never had a legal existence. The only defect suggested in the organization of the corporation is, that the call for the first meeting was signed by only one of the persons named in the act of incorporation, and not by a majority of them, as required by *St.* 1855, *c.* 140.

The case of *Utley* v. *Union Tool Company,* 11 Gray, 139, is the authority on which the defendants chiefly rely. That case decided that in order to charge as stockholders of a manufacturing corporation persons who had been summoned in an action against it under *St.* 1851, *c.* 315, the plaintiff must prove the legal existence of the corporation. The alleged corporation had no charter or act of incorporation from the legislature, but was an association which had undertaken to assume corporate powers under a general act for the formation of joint stock companies, *St.* 1851, *c.* 133. That statute authorized three or more persons who had entered into " articles of agreement in writing " for the transaction of certain kinds of business, to organize in a manner prescribed, and thereby to become a corporation; and the court were of opinion that written articles of agreement were essential to constitute a corporation, and that these articles must fix the amount of the capital stock, and set forth distinctly the purpose for which and the place in which the corporation was established. The court say, " There is an obvious reason for making such organization by written articles of agreement a condition precedent to the exercise of corporate rights. It is the basis on which all subsequent proceedings are to rest, and is designed to take the place of a charter or act of incorporation, by which corporate rights and privileges are usually granted." And they add that " it is not a case of a defective organization under a charter or act of incorporation, nor of erroneous proceedings after the necessary steps were taken to the assumption of corporate powers, but there is an absolute want of proof that any corporation was ever called into being, which had the power of contracting debts or of rendering persons liable therefor as stockholders."

We think these reasons have no application to the case now before us. In this, there was an act of incorporation from the legislature. There is no question that the corporate powers which it conferred were assumed by the persons by whom it was intended that they should be enjoyed, so far as they chose to avail themselves of them. The organization was not strictly regular, but can hardly be considered even as defective.

And if the object of the statute is regarded, by which it is required that the first meeting shall be called by a majority of the persons named in the act of incorporation, it will be evident that it is directory merely, and only designed to secure the rights conferred by the charter to those to whom it was granted, among themselves, by providing an orderly method of organization. Thus, if all the persons interested should come together without any notice or call whatever, and proceed to accept the charter, and do the other acts necessary to constitute the corporation, we cannot doubt that their action would be valid, and that neither the public, nor any persons not belonging to the association, would have any interest to question their proceedings.

The purpose of the statute was probably to avoid such difficulties as were disclosed in the case of *Lechmere Bank* v. *Boynton*, 11 Cush. 369, where two parties had attempted to organize separately under the same charter, each claiming to be the corporation.

There is nothing in the facts found and reported to show that all persons interested were not actually notified of the meeting for organization. On the contrary, it would seem that they were. No one has questioned the regularity of the proceedings, or claimed, as in *Lechmere Bank* v. *Boynton*, a right to organize in a different manner. The evidence was ample to show that the persons named in the act of incorporation with their associates, or at least all of them who desired to do so, have accepted the act, organized under it, issued stock, elected officers who have acted and served in that capacity, carried on business, contracted debts, and exercised all the functions of corporate existence. It is therefore too late to deny that the corporation ever had any legal existence, or for these officers to avoid the liabilities which the statutes of the Commonwealth impose.

The defendant Brackett, who was treasurer in February 1861, appears to have been liable with the directors under the provisions of Gen. Sts. *c.* 60, §§ 18, 20, 31.

*Exceptions sustained.*